## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| JOE OFFOLTER; | ) | |
| DANNY CALDWELL; | ) | |
| ELIZABETH BUTLER; | ) | |
| RANDY BLAIR; | ) | |
| BRYAN HAWK; | ) | |
| SCOTT YOUNG; | ) | |
| BOYD CASTER; | ) | |
| MICHAEL MAJOR; | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. CIV-24-749-G |
| | ) | |
| HORSERACING INTEGRITY AND | ) | |
| SAFETY AUTHORITY, INC.; | ) | |
| FEDERAL TRADE COMMISSION; | ) | |
| LINA KHAN, in her official capacity | ) | |
| as Chair of the Federal Trade Commission; | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiffs bring this civil action for declaratory and injunctive relief as a group of covered persons under the Horseracing Integrity and Safety Act of 2020 and allege:

1.     Plaintiffs, Thoroughbred racehorse owners, trainers, or other covered persons in Oklahoma, bring this action to challenge certain provisions of the Horseracing Integrity and Safety Act of 2020 ("HISA" or the "Act"), which, among other things, unconstitutionally delegates executive power to a private entity.

2.      Since 1983, the Oklahoma Horse Racing Commission (OHRC) has regulated horse racing in Oklahoma under the Oklahoma Horse Racing Act. *See* 3A O.S. § 200 *et seq*. The OHRC, under its statutory authority, has promulgated extensive, wide-ranging regulations (or rules)[1] to protect horse welfare, the related industry participants, and the integrity of the sport within Oklahoma. *See* 3A O.S. § 203.7. OHRC is the state agency with regulatory authority over *all* aspects of racing in Oklahoma, including promulgating and enforcing equine medication and safety rules. HISA only preempts certain safety regulations related to horseracing. *See* 15 U.S.C. § 3045(b).

3.      Most pertinent here, Congress has impermissibly delegated executive power to a private entity, the Horse Racing Integrity and Safety Authority, Inc. ("Authority") to regulate Plaintiffs and other industry participants.

4.      Under the Act, the Authority, has delegated enforcement responsibility to another private entity, the "independent" Horseracing Integrity & Welfare Unit (HIWU), a division of Drug Free Sport International (which is a fictitious name for Drug Free Sport LLC, a Delaware limited liability company). [2]

---

[1] A quick view of the OHRC's rules can be found at https://www.ohrc.ok.gov/static-assets/documents/Rules%20of%20Racing%20%20Updated%20September%2011%202023.pdf (last visited July 18, 2024) (unofficial version, citing Oklahoma's Administrative Code provisions).

[2] See, for example, this brief filed by the Authority (with HIWU's Counsel) with the FTC seeking to maintain redactions to subpoenaed documents, in which HIWU counsel says that HIWU is a division of Drug Free Sport LLC, found at (cont'd)

5.    In this action, the Court should declare certain HISA provisions and concomitant regulations unconstitutional and preliminarily and permanently enjoin Defendants (or any of its associates or agents) from implementing and enforcing the same in Oklahoma and/or grant Plaintiff's alternative relief under the APA or other federal law.

## PARTIES

6.    Plaintiffs are individual persons, owners and trainers, of Thoroughbred racehorses and participants in Oklahoma's horse racing industry. All are licensed by the OHRC. Most are participants in upcoming Thoroughbred meet scheduled to begin at Remington Park Racetrack in Oklahoma City, beginning August 16, 2024.[3]

7.    Defendant Horseracing Integrity and Safety Authority, Inc. is a nonprofit corporation chartered under the laws of Delaware with its principal place of business at 401 W. Main Street, Suite 222, Lexington, Fayette County, KY 40507. The Act delegates to the Authority the power to draft regulations that govern the horseracing industry, including a horseracing anti-doping and medication-control program and a racetrack safety program. The Authority also has enforcement powers under the Act. 15 U.S.C. §§ 3052(a), 3053.

---

https://www.ftc.gov/system/files/ftc_gov/pdf/611193.2024.07.12_hisa_brief_re_redacted_documents.pdf (last visited July 17, 2024).
[3] See Remington Park's 2024 Thoroughbred Season Calendar at https://www.remingtonpark.com/events/live-racing-aug16/ (last visited July 17, 2024).

8.    Defendant Federal Trade Commission (or FTC) is an independent agency of the United States Government.15 U.S.C. §§ 41-58.

9.    Defendant Lina Khan is the Chair of the Federal Trade Commission. Chairwoman Khan is sued in her official capacity only.

10.    The Act delegates to the FTC a limited power to approve or disapprove certain of the Authority's regulations governing horseracing anti-doping, medication control, and racetrack safety. In a recent amendment, Congress has given the FTC marginal additional authority to "abrogate, add to, and modify the rules of [HISA] promulgated in accordance with this Act." 15 U.S.C. § 3053(e). The Authority, under the Act, has the power to enforce HISA. § 3054.

## JURISDICTION AND VENUE

11.    This Court has subject-matter jurisdiction over this case because it arises under the Constitution and laws of the United States. See 28 U.S.C. §§1331, 1346(a)(2), 1361, 2201; 5 U.S.C. §§701-706.

12.    This Court is authorized to award the requested relief under 5 U.S.C. §706, 28 U.S.C. §1361; 28 U.S.C. §§2201, 2202.

13.    Venue is proper in this District because Defendants include a United States agency. And two of the Plaintiffs reside in this judicial district: Offolter in Dibble, Oklahoma, McClain County; and Butler in Oklahoma City, Oklahoma

County; Hawk in Shawnee, Oklahoma Pottawatomie County; Major in Edmond, Oklahoma, Logan County. Also, a substantial part of the events or omissions giving rise to the Complaint occur, or will occur, within this judicial district. *See* 28 U.S.C. §1391(e)(1).

## FACTUAL ALLEGATIONS

### The Horseracing Integrity and Safety Act of 2020

14.    On December 21, 2020, Congress enacted House Resolution 133, the 2,000-page Consolidated Appropriations Act, 2021, which was signed into law on December 27, 2020, as Public Law No. 116-260. Title XII of Division FF of the Consolidated Appropriations Act, 2021, constitutes HISA. Public Law No. 116-260, §§ 1201-1212, 134 Stat. 1182, 3252-75 (15 U.S.C. §§ 3051, et seq.).

15.    On December 30, 2022, the President signed into law Consolidated Appropriations Act of 2023, which amended the Act to grant the FTC the power to "abrogate, modify, or add to" rules previously promulgated by the FTC. 15 U.S.C. § 3053(e)). Congress did this in response to *Nat'l Horsemen's Benevolent & Protective Ass'n v. Black*, 53 F.4th 869 (5th Cir. 2022), which had held HISA unconstitutional because, without that additional authority, the FTC could not unilaterally change the Authority's proposed rules. *Id*. at 889 (5th Cir. 2022).

16.    HISA recognizes "[t]he private, independent, self-regulatory, nonprofit

corporation, to be known as the 'Horseracing Integrity and Safety Authority,' . . . for purposes of developing and implementing a horseracing anti-doping and medication control program and a racetrack safety program for covered horses, covered persons, and covered horseraces." 15 U.S.C. § 3052(a).

17.     HISA delegates to the Authority power to "exercise independent and exclusive national authority over . . . all horseracing safety, performance, and anti-doping and medication control matters for covered horses, covered persons, [and] covered horseraces." Id. § 3054(a)(2). HISA defines "covered" horses, persons, and horseraces initially to include only Thoroughbreds. *Id*. § 3051.

18.     HISA defines the term "covered horserace" as "any horserace involving covered horses that has a substantial relation to interstate commerce." *Id*. § 3051(5). "Covered persons" means "all trainers, owners, breeders, jockeys, racetracks, veterinarians, persons (legal and natural) licensed by a state racing commission and the agents, assigns, and employees of such persons and other horse support personnel who are engaged in the care, training, or racing of covered horses." *Id*. § 3051(6).

19.     HISA also delegates legislative power to the Authority to collect revenue from those covered persons and entities it regulates, and the Authority may charge a state racing commission (or industry participants) its proportionate share of the fees needed to operate the Authority. *Id*. § 3052(f).

20.    HISA does not define "agents, assigns, and employees of such persons and other horse support personnel who are engaged in the care, training, or racing of covered horses." *Id*. The Authority expands this broad classification to include everyone "licensed by a State Racing Commission" and who has "access to restricted areas of a racetrack in the ordinary course of your work." *See* Registration, HISA portal, found at https://portal.hisausapps.org/registration (last visited July 17, 2024).

21.    The Act gives the Authority investigatory powers and the right to enforce alleged rule violations with fines, suspensions, and civil enforcement actions, asserting the power of the federal government. *Id*. § 3054(j).

22.    Covered persons also must "cooperate with the [FTC], [HISA], the anti-doping and medication control enforcement agency [now HIWU], and any respective designee, during any civil investigation," and must "respond truthfully and completely" to any question asked by the FTC, HISA, "the anti-doping and medication control enforcement agency, or any respective designee." *Id*. §3054(d)(3). A registered person's failure to cooperate is a civil violation of the Act that could subject them to penalties or sanctions. *Id*. §3054(d)(4).

23.    The Authority's rules require all "covered persons" to have registered with the Authority by July 1, 2022, the effective date, or be considered in violation of HISA's rules and face sanctions. 87 Fed. Reg. at 446; 87 Fed. Reg. at 4028. The

sanctions include scratching or disqualifying horses associated with "covered persons."

24.     The Authority's Registration Rule requires "covered persons" to register on the Authority's website, at https://portal.hisausapps.org/registration. 87 Fed. Reg. at 446. As part of the registration process, a covered person must consent to the website's "Terms of Use" and "Privacy Policy," which among other things, mandates a "registered person" to

> grant to the Authority a non-exclusive, worldwide, royalty-free, irrevocable, perpetual (or for the term of the protection), sub-licensable, and transferable license to such user content, to access, use, store, copy, modify, prepare derivative works of, distribute, publish, transmit, stream, broadcast, and otherwise exploit in any manner such user content to provide and/or promote the Service, in any media or platform.

https://portal.hisausapps.org/registration ("Terms of Use"). [4]

The Authority's website's "Privacy Policy" allows the Authority to share a "covered person's" nonpublic and personally identifiable information with third parties and or unidentified "service providers."

---

[4] Found at https://hisacentralstorage.blob.core.windows.net/termsandconditions/HISA_Website_Terms_of_Use.pdf?se=2025-06-29T05%3A35%3A17Z&sig=E%2Bg%2Fd4baaOq%2BCbXrQkfYdHy%2FX6v3x8ejir02qllB4DY%3D&sp=r&spr=https&sr=b&st=2022-06-28T21%3A35%3A17Z&sv=2021-06-08 (last visited July 17, 2024).

https://portal.hisausapps.org/registration ("Privacy Policy"). [5]

The Authority's registration website's "Term's of Use" and "Privacy Policy" are found in neither HISA nor the Registration Rule approved by the FTC.

25.    To that end, the FTC, in its order approving the Registration Rule, acknowledged in a footnote that,

> Some callers complained about the routine terms of service on the Authority's registration website, but the Commission has not received those terms let alone approved them, so they cannot form the basis for any action the Authority might take in its role under the Act.

June 29, 2022 FTC Order approving Registration Rule (dated June 29, 2022), at 5, Note 10. [6] Yet, the FTC-approved Registration Rule still requires covered persons to register through the website, and failure to do so is a violation and subject to sanctions and discipline.

26.    In creating a private regulatory body with federal oversight of the horseracing industry, Congress elected to fund the Authority without appropriating

---

[5] Found at https://hisacentralstorage.blob.core.windows.net/termsandconditions/HISA_Website_Privacy_Policy.pdf?se=2027-04-22T04%3A14%3A33Z&sig=Pwk8%2Fy6t0LNOyxvnBCT8TXtQID50tFEoYuItgrDAwIE%3D&sp=r&spr=https&sr=b&st=2022-04-21T20%3A14%3A33Z&sv=2020-08-04 (last visited July 17, 2024).

[6] Found at https://www.ftc.gov/system/files/ftc_gov/pdf/P222100CommissionOrderRegistrationRuleFinal.pdf (last visited July 17, 2024).

funds. Instead, it authorized the Authority to obtain loans for initial operations. § 3052(f)(1)(A). Thereafter, the Authority assesses fees to cover its operations on States (that opt in), or through assessment fees to covered persons. § 3052(f)(3).

**HISA Challenges**

27.     After an APA challenge, a federal district court in Louisiana held that the FTC's implementation of the rules violated the APA and enjoined their enforcement (in certain states, and for certain parties). *See Louisiana v. Horseracing Integrity & Safety Auth. Inc.*, No. 6:22-CV-01934, 2022 U.S. Dist. LEXIS 132929, at *31 (W.D. La. July 26, 2022).

28.     In a challenge involving Oklahoma, the Sixth Circuit found that Congress's amendment, at 15 U.S.C. § 3053(e), cured the facial constitutional defect by placing the Authority subordinate to the FTC. *Oklahoma v. United States*, 62 F.4th 221, 231 (6th Cir. 2023), *cert. denied*, No. 23-402, 2024 WL 3089535 (U.S. June 24, 2024).

29.     Pertinent here, the Sixth Circuit evaluated the challenge to the Act's enforcement provisions as a facial challenge, not an as-applied challenge to an individual enforcement action. 62 F.4th 221, 233 ("We thus will decide the case as it comes to us, and save resolution of such questions…for a day when the Authority's actions and the FTC's oversight appear in concrete detail, presumably in the context

of an actual enforcement action.").

30.    A few weeks ago, the Fifth Circuit, on another look at HISA, disagreed with the Sixth Circuit, holding that HISA's enforcement provisions, on its face, unconstitutionally delegates federal executive power to a private entity. *Nat'l Horsemen's Benevolent & Protective Ass'n v. Black*, No. 23-10520, 2024 WL 3311366, at *18 (5th Cir. July 5, 2024) ("Insofar as HISA is enforced by private entities that are not subordinate to the FTC, we DECLARE that HISA violates the private nondelegation doctrine."); *see also id*. at *6 ("[T]he Horsemen argue that HISA, on its face, vests the Authority with enforcement power that is effectively unreviewable by the agency," in response to the Authority's standing argument).

## COUNT I
### Violation Of the U.S. Constitution (Non-Delegation Doctrine)
### (Fourth and Seventh Amendments)

31.    The allegations in all preceding paragraphs are incorporated herein by reference.

32.    Congress has delegated regulatory enforcement authority over the horseracing industry to the Authority, a private, nongovernmental entity. The private nondelegation doctrine is found in Article I, Section I of the Constitution.

33.    The U.S. Constitution vests "the executive Power" of the United States in a "President." U.S. Const. art. II, § 1. Article II confers on the President "the

general administrative control of those executing the laws." *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 492–93 (2010). It is his responsibility to take care that the laws be faithfully executed. *Id.*

34.     Under HISA, the Authority or its designee (HIWU) may seek civil penalties from enforcement actions under these rules that will deprive aggrieved parties of their property rights and economic interests without providing aggrieved parties the right to a jury trial, in violation of the Constitution's Seventh Amendment. See *Jarkesy v. Sec. & Exch. Comm'n*, 34 F.4th 446, 454 (5th Cir. 2022) *aff'd and remanded*, 144 S. Ct. 2117 (2024); *Tull v. United States*, 481 U.S. 412, 418–419 (1987).

35.     HISA does not give the FTC authority to approve, disapprove, or otherwise review decisions of the Authority (or HIWU) before issuing subpoenas and exercising investigatory authority. Nor does HISA give the FTC the power to independently investigate or enforce any rule violation.

36.     HISA Rule 8400 subjects covered persons to searches and seizures by the Authority or its designated agents without prior approval by a judge or magistrate, violating the Fourth Amendment to the U.S. Constitution. *Arizona v. Grant*, 556 U.S. 332, 338 (2009) ("searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth

Amendment").

37.     The Rule provides that the Authority "or [its] designees," "[s]hall have free access to the books, records, offices, racetrack facilities, and other places of business of Covered Persons that are used in the care, treatment, training, and racing of Covered Horses, and to the books, records, offices, facilities, and other places of business of any person who owns a Covered Horse or performs services on a Covered Horse," and that the Authority and its designees "[m]ay seize any medication, drug, substance, paraphernalia, object, or device in violation or suspected violation of any provision of 15 U.S.C. § 57A or the regulations of the Authority." 87 Fed. Reg. at 4031.

38.     When, as here, a litigants challenge the constitutionality of a federal agency's enforcement power, they need not exhaust administrative remedies before doing so. *Axon Enter., Inc. v. Fed. Trade Comm'n*, 598 U.S. 175, 185 (2023).

**COUNT II**

**Administrative Procedure Act Violations**

39.     The allegations in all preceding paragraphs are incorporated herein by reference.

40.     Under the APA a "reviewing court shall … hold unlawful and set aside agency action ... found to be... not in accordance with law" or "in excess of statutory

jurisdiction, authority, or limitations." 5 U.S.C. §706(2)(A) and (C).

41.     Likewise, a "reviewing court shall ... hold unlawful and set aside agency action ... found to be arbitrary, capricious, [or] an abuse of discretion." 5 U.S.C. §706(2)(A). The APA requires federal agencies to engage in reasoned decision-making. *Michigan v. EPA*, 576 U.S. 743, 750 (2015). "Not only must an agency's decreed result be within the scope of its lawful authority, but the process by which it reaches that result must be logical and rational." *Id*. (citations omitted).

**Registration Rule**

42.     The FTC acknowledged and then failed to meaningfully address problems with the Registration Rule raised during the comment period. Specifically, the Authority's registration website's "Terms of Use" was not submitted to nor approved by the FTC. Neither was the website's "Privacy Policy."  The Authority's registration website requires consent to its "Terms of Use" and "Privacy Policy" to comply with the Registration Rule.

43.     The Privacy Act of 1974, 5 U.S.C. § 552a, establishes a code of fair information practices that govern the collection, maintenance, use, and dissemination of information about individuals that is maintained in systems of records by federal agencies.

44.     Because the Registration Rule exceeds the limits of the FTC's and

Authority's mandate under the Act and other federal law, it must be enjoined and vacated.

**Assessment Rule**

45.     In approving the Assessment Rule (Rule 8500 Series), the FTC ignored commentators who identified that HISA's rules for assessing fees are contrary to law because the Authority based assessments on purse size and racing starts but the Act limits the assessment methodology solely to race starts, with no mention of purse size. 15 U.S.C. §3052(f)(C)(ii)(I)(bb).

46.     HISA allows states to elect to assess and collect fees on covered persons. 15 U.S.C. § 3052(f)(2)(A). But if the state, like Oklahoma, does not make such an election, then the Authority collects the fees. § 3052(f)(3).

47.     The assessment methodology must be based on the projected number of covered racing starts for the year in each State. *Id*. §3502(f)(C)(ii)(I)(bb). The rule calculates assessments in part based on the purse size from the races held within a state. 87 Fed. Reg. at 9352. The FTC acknowledged that this methodology "focuses on a metric that is not part of the Act's basis of calculation of fees—purses." Assessment Methodology Rule Order at 11 (dated April 1, 2022) (citing comment).[7] According to

---

[7] Order can be found at https://www.ftc.gov/system/files/ftc_gov/pdf/Order%20re%20HISA%20Assessment%20Methodology.pdf (last visited July 18, 2024).

the FTC, it could ignore the explicit statutory language because of the "broad directive" for the Authority to promulgate a methodology. *Id*. at 24.

48.     Instead of promulgating a Rule within the Act's mandate, the Authority has ordered racetracks to collect its fees (under Rule 8520(e)(4)). The Authority acknowledges Remington Park objected to collecting fees on behalf of the Authority. Assessment Methodology Rule Order at 21 ("Remington Park objected that the proposed intrastate methodology places the burden of collection on the Racetrack."). The FTC brushed off the concerns of the racetracks and horsemen with a reversion to the catchall phrase, "The Act empowers the Authority to collect these fees 'according to such rules as the Authority may promulgate'…" *Id*. at 24.

49.     And, instead of equitably applying the assessment equitably to all covered persons involved with covered horseraces under the Act, *see* 15 U.S.C. § 3052(f)(3)(B)), the Rule give the racetracks discretion on how to apportion the fees with approval by the Authority. In practice, the Authority has rejected applying the assessment equitably among all covered persons, and instead assessing racetracks and horse owners (through purses or entry fees).

50.     Because the Assessment Rule exceeds the statutory limits under the Act, it must be enjoined and vacated.

**Rule 8400-Enforcement Rule**

51.     The FTC failed to meaningfully address problems with the Enforcement Rule raised in the improperly abbreviated comment period, including the Fourth Amendment issues and inconsistencies between Rule 8400 and the Act.

52.     The FTC did not explain why the Enforcement Rule was consistent with the Fourth Amendment, and its analysis of the statutory issue was unreasonable, arbitrary, and capricious.

53.     Because the Enforcement Rule is arbitrary and capricious, it must be vacated and enjoined.

54.     In addition, the Enforcement Rule allows the Authority or its designee to seek civil penalties from covered persons. The Enforcement Rule violates the Seventh Amendment's guarantee of a jury trial.

55.     Because the Enforcement Rule violates the Seventh Amendment, it must be vacated and enjoined.

56.     Rule 8400 also empowers the Authority to seize personal property when the Act limits it to investigatory power. Compare 87 Fed. Reg. at 4031, with 15 U.S.C. §3053(c)(1)(A).

57.     Because Rule 8400 exceeds the statutory limits under the Act, it must be enjoined and vacated.

**RELIEF**

WHEREFORE, Plaintiffs ask this Court to enter judgment in their favor and to provide the following relief:

a.      A declaratory judgment, under 28 U.S.C. § 2201 and Fed. R. Civ. P. 57, declaring certain HISA provisions and HISA regulations, as set forth above, unconstitutional;

b.      A declaratory judgment that the FTC exceeded its statutory authority by approving certain HISA rules, as set forth above;

c.      A declaratory judgment that certain HISA rules, as set forth above, are arbitrary and capricious under the APA;

d.      A declaratory judgment that HISA's Enforcement Rules, as set forth above, violates the Fourth and Seventh Amendments to the United States Constitution;

e.      A declaratory judgment and permanent injunction finding certain HISA rules, as set forth above, invalid and setting them aside;

f.      A temporary restraining order and an injunction, under Fed. R. Civ. P. 65, prohibiting the Authority (or HIWU) or the FTC from enforcing HISA, or taking any enforcement actions based on HISA;

     g.     All other relief to which Plaintiffs are entitled, including but not limited to attorneys' fees and costs.

Dated: July 24, 2024

Respectfully Submitted,

___s/*Terry M. McKeever*_____
Christopher L. Kannady, OBA #20513
Terry M. McKeever, OBA#21751
P.O. Box 890420
Oklahoma City, OK  73189
Telephone: (405) 632-6668
Facsimile:  (405) 632-3036
Email: tmm@fylaw.com